**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE JOHN GEARING, | ) | CASE NO. 1:16CV02440 |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE |
| | ) | PATRICIA A. GAUGHAN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| NANCY A. BERRYHILL, | ) | JONATHAN D. GREENBERG |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |

Plaintiff, George John Gearing ("Plaintiff"), challenges the final decision of Defendant, Nancy A. Berryhill,[1] Acting Commissioner of Social Security ("Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for preparation of a Report and Recommendation. For the reasons set forth below, it is recommended that the Commissioner's final decision be VACATED and this matter be REMANDED for further proceedings.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security.

1

## I. PROCEDURAL HISTORY

In February 2013, Plaintiff filed an application for DIB alleging a disability onset date of August 27, 2011 and claiming he was disabled due to lumbar disc disease with back pain; leg pain, and muscle spasms; low back pain and frequent falls; depression and anxiety; and hypertension. (Transcript ("Tr.") 215). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 124-45).

On February 26, 2015, an ALJ held a hearing, during which Plaintiff, represented by an accredited disability representative, and an impartial vocational expert ("VE") testified. (Tr. 42-79). On May 1, 2015, the ALJ issued a written decision finding Plaintiff was not disabled. (Tr. 30-37). The ALJ's decision became final on August 19, 2016, when the Appeals Council declined further review. (Tr. 1-6).

On October 5, 2016, Plaintiff filed his Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 12, 14, 15). Plaintiff asserts the following assignments of error:

> (1) Whether the ALJ violated agency rules and governing law when he failed to accord the appropriate deference to, or provide good reasons for his rejection of, the opinion of Plaintiff's treating neurologist, Lisa Kurtz, M.D.
>
> (2) Whether the ALJ erred by relying on a state agency opinion that was based on an incomplete review of the medical evidence.

(Doc. No. 12 at 1).

//

//

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in March 1964 and was a "younger" person at all times relevant to his claim under social security regulations. (Tr. 36, 52). He has an eleventh grade education and is able to communicate in English. (Tr. 36, 216). He has past relevant work as a locomotive mechanic. (Tr. 71, 216).

### B. Medical Evidence

During the period relevant to his claim,[2] Plaintiff sought treatment from neurologist Lisa Kurtz, M.D. on three occasions. (Tr. 240-44, 491-94). On November 22, 2011, Plaintiff complained that earlier in the week his leg suddenly went numb and he almost fell over. (Tr. 242). Dr. Kurtz noted that Plaintiff had a history of lumbar disc disease, and she observed that Plaintiff had an antalgic gait. (*Id.*). On May 10, 2012, Plaintiff complained that he had been falling a lot; that he had trouble walking; and that he was experiencing more weakness than pain in his legs. (Tr. 241). In one instance, his leg reportedly went out and he fell into his dresser. (Tr. 241). On November 22, 2012, Plaintiff complained that his legs were bothering him and that he had a few falls. (Tr. 240). He reported pain, weakness, and sometimes numbness. (Tr. 241).

---

[2] In order to be eligible for disability insurance benefits under Title II of the Social Security Act, a claimant must present evidence that his disability existed prior to the expiration of his insured status (date last insured). *See* 42 U.S.C. § 423(c). In this case, Plaintiff's insured status expired March 31, 2013. (Tr. 32). Accordingly, in order to be eligible for Title II disability benefits, Plaintiff must demonstrate that his disability began prior March 31, 2013. Because Plaintiff alleged his disability began on August 27, 2011, the relevant period under review for Plaintiff's claim is from August 27, 2011 to March 31, 2013. (Tr. 197).

Other relevant treatment notes show that Plaintiff had an antalgic gait due to chronic lower back pain and diffuse back tenderness to palpation. (Tr. 252, 253).

**C.     Opinion Evidence**

On July 8, 2013, Dr. Kurtz completed a questionnaire on behalf of Plaintiff. (Tr. 259-60). Dr. Kurtz indicated that she had been treating Plaintiff since September 2008. (Tr. 259). She diagnosed low back pain, lumbar degenerative disc disease, and leg pain. (Tr. 259). Clinical findings included antalgic gait with use of a cane. (Tr. 259). Noted symptoms included fatigue, pain, balance problems, weakness, unstable walking, numbness/tingling/sensory disturbance, and increased muscle tension. (Tr. 259). Dr. Kurtz opined that Plaintiff needed an assistive device to walk more than five feet due to balance problems and lower extremity weakness. (Tr. 259). She also opined that on average Plaintiff was likely to be absent from work more than three times a month due to complications from his impairment or to received necessary medical treatment. (Tr. 260). She also opined that Plaintiff's fatigue, weakness, or pain is sufficiently severe to interfere often with his attention and concentration. (Tr. 260). Dr. Kurtz concluded that Plaintiff was not able to work. (Tr. 260).

On July 11, 2013, state agency physician, Dr. Leslie Green, M.D., reviewed Plaintiff's medical record and concluded that an ALJ's formulation of Plaintiff's RFC for a previously adjudicated period (decision date: August 26, 2011) should be adopted based on Acquiescence Ruling (AR) 98-4(6). (Tr. 141). Dr. Green accordingly opined that Plaintiff was able to perform sedentary work; was unable to use ladders, ropes, or scaffolds; and could occasionally climb stairs or ramps. (Tr. 142).

**D. Hearing Testimony**

The VE testified Plaintiff had past work as a locomotive mechanic. (Tr. 71). The ALJ asked the VE to consider a hypothetical person who was limited to sedentary work activity with a limitation to occasional ramps and stairs and no ladders, ropes, or scaffolds, and who was required to use a cane for ambulation over more than a very short distance. (Tr. 73).

The VE testified the hypothetical individual would not be able to perform past work as a locomotive mechanic. (Tr. 36, 72-73). However, the VE concluded that the hypothetical individual would be able to perform other representative jobs in the economy, such as table worker, final assembler, and bonder. (Tr. 37, 73-74).

## III. STANDARD FOR DISABILITY

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of

age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ determined that Plaintiff's severe impairments consisted of degenerative disc disease and herniated disc. (Tr. 32-33). After deciding that Plaintiff's impairments did not meet or equal any listed impairment and that he was unable to return to his past work, the ALJ concluded that he was not disabled at step-five of the sequential evaluation. (Tr. 34-37).

In reaching this conclusion, the ALJ noted that Plaintiff had previously applied for disability benefits and, on August 26, 2011, had been assigned the following RFC:

> I find that the claimant has the residual functional capacity to perform sedentary work as described in 20 CFR 404.1567(a), meaning the claimant can stand/walk for two hours out of an eight-hour workday and sit for six hours out of an eight-hour work day, except the claimant cannot use ladders, ropes, or scaffolds, but can occasionally use stairs or ramps.

(Tr. 35). The ALJ indicated that pursuant to Acquiescence Ruling 98-4(6), he was obligated to adopt the prior above-quoted RFC absent any new and material evidence. (*Id.*). After observing that state agency reviewer Leslie Green, M.D., had concluded there was no new and material evidence, the ALJ reached the same conclusion and decided that Acquiescence Ruling 98-4 applied. (*Id.*). The ALJ accordingly adopted the prior RFC, but with one additional limitation: the ALJ gave some credence to Plaintiff's claim that required the use of a cane for short distances "as needed," and the ALJ incorporated this additional limitation into the RFC. (*Id.*).

6

The ALJ then considered the claimant's age, education, work experience, and residual functional capacity and, based on VE testimony, concluded that there were jobs that existed in significant numbers in the national economy that the claimant could have performed. Those jobs included table worker, final assembler, and bonder. (Tr. 36-37).

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at *2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir.

2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v.*

*Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

### A. Treating Physician Rule

Plaintiff maintains that the ALJ erred by failing to provide "good reasons" for affording Dr. Kurtz's opinion less than controlling weight. In response, the Commissioner argues that the ALJ did provide the requisite "good reasons." For the reasons described below, the Court accepts Plaintiff's argument.

A treating source opinion must be given "controlling weight" if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2).[3] However, "a finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec*., 581 F.3d 399 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9). Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[4] *See also Gayheart*,

---

[3] Revised versions of these regulations took effect on March 27, 2017 and apply to disability claims filed on or after that date. *See* 82 Fed. Reg. 5844 (March 27, 2017).

[4] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the

710 F.3d at 376 ("If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.,* as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id*. § 404.1527(c)(2)-(6).")

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). *See also Gayheart*, 710 F.3d at 376. The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth

> treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.[5]

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

---

[5] "On the other hand, opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R § 404.1527(c). Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion. *Id*. § 404.1527(c)(6)." *Gayheart*, 710 F.3d at 376.

In this case, Plaintiff's focus is on whether the ALJ properly assessed Dr. Kurtz's opinion that, because of his impairments, Plaintiff would be absent from work more than three times a month.[6] As noted above, the VE testified that if this limitation were incorporated into Plaintiff's RFC, it would be work preclusive.

In the administrative decision, the ALJ addressed and weighed Dr. Kurtz's opinion as follows:

> I give Dr. Kurtz's opinion little weight. First, the issue of disability is one reserved for the Commissioner (SSR 96-5p). Next her opinions as to the claimant's dysfunction are contradicted by the claimant's extensive activities of daily living noted by Mr. Davis. (Ex. B2F). As indicated, the claimant drives, cleans, shops, does laundry, does dishes, and has a girlfriend. He has rejected the option of surgical intervention for his disc disease.

---

[6] While not addressed by the parties, it bears noting that some courts, including at least one judge in this district, have concluded that treating physician opinions regarding predicted work absences do not constitute "medical opinions." *See Littleton v. Comm'r of Soc. Sec.,* 2016 WL 6090816 (N.D. Ohio Nov. 19, 2013) (Report and Recommendation of Magistrate Judge Greg White); *See also Arnett v. Astrue*, 2008 WL 4747209 at * 5 (W.D.Ky. Oct.17, 2008); *Hagan v. Colvin*, 2013 WL 3350838 at * 3 (W.D.Ky. July 3, 2013). The reasoning behind these decisions is that such opinions are essentially "tantamount to a finding of disability" since excessive work absences are generally work preclusive.

Other courts have decided that such opinions do constitute "medical opinions" and that an ALJ must, therefore, provide "good reasons" for rejecting them. *See e.g. Branson v. Astrue*, 2008 WL 111317 at * 4–5 (E.D.Tenn. Jan.8, 2008) (vacating and remanding where ALJ failed to provide a valid basis for rejecting treating surgeon's opinion that claimant would be expected to have excessive work absences).

However, because this issue was not raised by counsel, the Court need not resolve it.

12

> The record shows no hospitalizations during the time frame at issue, August 27, 2011 through March 31, 2013.

(Tr. 36).

Although the Court agrees with the Commissioner that Dr. Kurtz's opinion that Plaintiff is not able to work deserves no deference because that is an issue reserved for the Commissioner, the ALJ fails to adequately justify his conclusion that Dr. Kurtz's opinion otherwise deserves little weight. The relevant portion of Dr. Kurtz's opinion is her assertion that Plaintiff will be absent from work at least three times a month. The Commissioner maintains that the ALJ properly rejected this limitation by concluding that it is "inconsistent with Plaintiff's ability to maintain an extensive array of daily activities," which, as stated by the ALJ, include driving, cleaning, shopping, doing laundry, doing dishes, and having a girlfriend. (Doc. No. 14 at 7-8; Tr. 36). The ALJ's citation to Plaintiff's daily activities does not reasonably serve to undermine Dr. Kurtz's opinion that Plaintiff will be absent at least three times per month. And the Commissioner's argument that evidence of Plaintiff's daily activities demonstrates "that Plaintiff's lower back and leg pain did not prevent him from maintaining normal activities on a routine basis," does not answer the pertinent question. (Doc. No. 14 at 8). The issue here, as the Commissioner herself acknowledges, relates to the predicted absences. (Doc. No. 14 at 7). It is not apparent, and the ALJ has failed to explain, how Plaintiff's ability to drive, for example, might discredit his treating physician's opinion that he would be absent from work at least three times a month. The fact that Plaintiff can drive or wash dishes or do laundry has little apparent relation to whether he would have excessive absences due to complications from his impairments or to receive necessary medical treatment. Further, the fact that Plaintiff has a girlfriend has simply no relevance to this issue.

13

The Sixth Circuit has observed, though in the context of a credibility analysis, that a claimant's ability to engage in certain minimal activities of daily living is not comparable to the ability to engage in typical work activities. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007); *see also Hughes v. Astrue*, 705 F.3d 276, 278-79 (7th Cir. 2013) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons, . . . , and is not held to a minimum standard of performance, as she would be by an employer."). Similarly, in this context, the fact that Plaintiff can engage in certain activities of daily living does not, in and of itself, translate into the ability to go to work on a daily basis, without fail, such that a treating physician opinion on this subject would be called into question. Because the ALJ failed to reasonably draw a line between these two points, the Court must reject his analysis.

The ALJ's opinion also seems to suggest two other reasons for discounting Dr. Kurtz's opinion, neither of which are addressed by the Commissioner. First, the ALJ asserted, without citation to the record, that Plaintiff "has rejected the option of surgical intervention for his disc disease." (Tr. 36). One problem is that this assertion is not a reasoned explanation; it is just a declarative sentence. The ALJ may have meant to imply that because Plaintiff opted out of a potentially helpful treatment, it calls into question the severity of his impairment and the basis for Dr. Kurtz's medical opinion. But, the ALJ did not clearly offer this or any other explanation.

Another problem is that the ALJ merely characterized Plaintiff's decision as a "rejection" of treatment without fully addressing Plaintiff's reasons for his decision. Based on his testimony, it is evident that Plaintiff decided to forgo surgery because of the risks. When

14

asked why he opted out of surgery, he explained that he was "[s]cared to death. . . . From what I understand, . . . just because of the, the discs that are injured . . . . I don't want to end up in a wheelchair." (Tr. 77). Neither the ALJ nor the Commissioner addressed this testimony. And there is no discussion, based on the record evidence, of the circumstances surrounding Plaintiff's decision to forgo surgery. There is no citation to or discussion of relevant doctor's notes that would lend support to the ALJ's suggestion that Plaintiff's decision to opt out of surgery somehow undermines Dr. Kurtz's opinion.

As part of his discussion of Dr. Kurtz's opinion, the ALJ also mentioned that Plaintiff was never hospitalized during the relevant period. As above, this is not a reasoned explanation; it is just a statement of a fact. By failing to draw a line between the lack of hospitalization and his decision to afford Dr. Kurtz's opinion less than controlling weight, the ALJ did not comport with the reason-giving requirement of the treating physician rule.

In sum, the Court concludes that the ALJ failed to provide sufficiently specific reasoning to support his decision to afford Dr. Kurtz's opinion less than controlling weight.

//
//
//
//
//
//
//
//

15

**B.     Acquiescence Ruling 98-4(6)[7] and the ALJ's Reliance on the Opinion of State Agency Reviewer Leslie Green, M.D.**

Plaintiff also asserts that the ALJ's reliance on the opinion of state agency reviewer Leslie Green, M.D. was erroneous because Dr. Green did not have the opportunity to consider the opinion of Dr. Kurtz, which was generated after Dr. Green rendered his opinion. According to Dr. Green, *Drummond v. Comm'r of Soc. Sec.*, and Acquiescence Ruling 98-4(6) were applicable to Plaintiff's application because he had previously sought benefits.

Under this authority, absent evidence of changed circumstances in a claimant's condition, principles of *res judicata* apply to an ALJ's decision on the claimant's prior disability claim. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997); AR 98-4(6). In such situations, the ALJ must adopt findings from the prior ALJ's decision, including the claimant's residual functional capacity. *See id.* Dr. Green accordingly concluded that because there was no evidence of changed circumstances in Plaintiff's condition, the previous sedentary RFC should be adopted. (Tr. 141-42).

The Commissioner, while acknowledging that Dr. Green did not consider Dr. Kurtz's opinion in reaching his decision that Acquiesence Ruling 98-4 applied, maintains the ALJ's reliance on Dr. Green's opinion was not error. The Court agrees that in making her argument

---

[7]     The issues surrounding Acquiescence Ruling 98-4 were raised by the Commissioner and not by Plaintiff, and neither side is claiming that the ALJ erred in its application. While the Commissioner does not say it explicitly, there seems to be the implication that because "*res judicata* required that the ALJ adopt an RFC formulated for a previously adjudicated period," (Doc. No. 14 at 5), the Court is foreclosed from reviewing the ALJ's application of the treating physician rule with respect to Dr. Kurtz. To the extent the Commissioner is making such an argument, it is rejected. The Court is not aware, and Defendant does not cite, any authority that would allow the Commissioner to avoid substantive review based on the invocation of an Acquiescence Ruling.

16

Defendant has appropriately referenced 20 C.F.R. § 404.1527(c)(4), which states that "[t]here is no regulation or case law that requires the [administrative law judge] to reject an opinion simply because medical evidence is produced after the opinion is formed." However, the Court concludes that the question whether the ALJ appropriately relied on Dr. Green will likely be moot, because of this Court's above-conclusion that the ALJ failed to provide "good reasons" for discounting the opinion of Dr. Kurtz. Should this matter be remanded as the Court recommends, the ALJ will be required to reassess Dr. Kurtz's opinion in light of this Court's opinion. Depending on that assessment, the ALJ must again weigh Dr. Green's opinion and determine whether it is consistent with the record as a whole. As such, the Court need not decide whether the ALJ appropriately assessed Dr. Green's opinion in this instance.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be VACATED and this matter REMANDED for further proceedings.

        *s/Jonathan D. Greenberg*
        Jonathan D. Greenberg
        United States Magistrate Judge

Date: July 31, 2017

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** ***See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981);** ***Thomas v. Arn*, 474 U.S. 140 (1985),** ***reh'g denied*, 474 U.S. 1111 (1986).**